1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10  MICHAEL EUGENE KINCADE,

11              Petitioner,                    2: 11 - cv - 788 - TJB

12        vs.

13  KATHLEEN ALLISON,

14              Respondent.                         ORDER

15  _____/

16        Petitioner, Michael Eugene Kincade, is a state prisoner proceeding with a *pro se* petition

17  for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an

18  aggregate term of seventeen years in prison after a jury convicted him on one count of

19  committing a lewd of lascivious act upon a child under the age of 14 (Cal. Penal Code § 288(a)).

20  Petitioner raises four claims in this federal habeas petition; specifically: (1) California Evidence

21  Code section 1108, which allows the introduction of propensity evidence when the defendant is

22  charged with a sexual offense, is unconstsitutional ("Claim I"); (2) Petitioner's right to due

23  process and a fair trial were violated as a result of the introduction of propensity evidence,

24  evidence that Petitioner had committed a prior, uncharged sexual offense ("Claim II"); (3) the

25  jury instructions relating to the prior sexual offense permitted a finding of guilt based on facts not

26  proved beyond a reasonable doubt ("Claim III"); and, (4) the trial court violated Petitioner's

1

rights by failing to give a *sua sponte* instruction to the jury on voluntary intoxication ("Claim IV"). Both Petitioner and Respondent consented to the jurisdiction of a United States Magistrate Judge in this case. Docket Nos. 5, 12. For the reasons stated herein, the federal habeas petition is denied.

## I. FACTUAL BACKGROUND[1]

On December 8, 2008, defendant was at home with his family. As was usual, he had taken Vicodin that morning and an Excedrin PM before bed. He had also consumed six 32-ounce bottles of beer and two or three 24-ounce cans of beer. Defendant drinks daily and this was not an unusual amount of beer for him to drink. He was "a little drunk" but not abnormally so and was not behaving in an unusual manner. On occasion when defendant drinks, he blacks out and does not remember what he has done.

At approximately 11:00 o'clock that night, 13-year-old M.C. went to bed on a couch in the living room, wearing her pajama pants, underwear, and a T-shirt. Sometime later, M.C. woke up. Defendant was standing next to her. Her pajama pants were off and then her underwear was taken off. Defendant then touched M.C.'s vagina. She cried and repeatedly told him to stop, but he did not.

Defendant's wife Casey woke up around 12:15 a.m. and noticed defendant was not in bed. She yelled his name and jumped out of bed when he did not answer. While she was coming downstairs, defendant stopped touching M.C. and went to the kitchen, where Casey found him. He told Casey he was getting water.

Casey noticed M.C. was awake and went over to her. She could not see M.C.'s pajamas from under the blanket and this struck her as unusual. M.C. looked scared, and when Casey pulled the blanket off, M.C. did not have on her pajama pants or underwear. Casey asked M.C. where her clothes were and M.C. pointed to defendant. She told Casey defendant had taken off her pants and had touched her. Casey started yelling at defendant and left the home with M.C. and her half sister. They went to the store down the street.

Defendant went to his brother Adam's house next door. He was upset about M.C.'s accusation. Adam called Casey to find out what was happening, and eventually convinced her to come back to the house. At the house, M.C. told Adam that defendant had touched

---

[1]     The factual background is taken from the California Court of Appeal, Third Appellate District decision on direct appeal from September 2010 and filed in this Court by Respondent on July 26, 2011 as Exhibit A to her Answer (hereinafter referred to as the "Slip Op.").

her. She remained consistent about what defendant had done. When defendant challenged her to "say it out loud" she responded, "You did it." Adam told Casey to call the police, and Casey took the girls to Adam's house. Other than his anger at the situation, defendant's behavior was not unusual.

After his arrest and while in jail, defendant repeatedly called Casey. He demanded she not accept subpoenas and suggested she not show up to testify and not bring M.C. to testify, because if they did not testify there would be "no case." Defendant also assured Casey, and possibly M.C., that it would never happen again.FN2 Defendant and Casey also discussed family issues and problems Casey was having.

> FN2. M.C.'s voice could not be positively identified on the phone recording.

Casey stated M.C. is not a child who makes up stories, and she had never made molestation accusations against anyone else. Adam also testified that M.C. is not the type of girl to make things up.

Evidence was also admitted under section 1108 of a prior uncharged sexual offense. In May 2000 J.M. was 18 years old. She was coming home from a party when she met a young man, and the two went looking for methamphetamine. The young man had a friend who could get them drugs, so they went to that friend's apartment. The friend was not home, but defendant was. He came out of his apartment, said he was waiting for drugs, and offered to let them wait with him. J.M. waited with defendant in his apartment while the young man went down the street to use a telephone. Defendant expressed concern for J.M.'s safety since she was wandering around with a stranger. He offered to let her stay at his place for the night. Because of the expressed safety concerns, they did not answer the door when the young man returned. They talked for a while, watched a movie, and J.M. fell asleep.

When J.M. woke up, defendant was "spooning" her and fondling her chest and hips. She confronted him and he grabbed her, flipped her down, pressed her face into the cushions, and tried to remove her clothes. His hand was over her throat and he was suffocating her. J.M. passed out.

When J.M. regained consciousness, defendant was raping her. She could not get up because he was pinning her down. She tried to scream but he told her no one could hear her. She told him to stop, but he did not stop until he ejaculated. He then threatened to "get" her boyfriend once he was in jail. J.M. immediately went to the hospital and reported the rape. She had bruising on her chin and neck, and broken blood vessels in her face.

## II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The relevant state court determination for purposes of AEDPA review is the last reasoned state court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher

4

1  threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

2  "When it is clear, however, that the state court has not decided an issue, we review that question

3  *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

4  545 U.S. 374, 377 (2005).

5                    III.  ANALYSIS OF PETITIONER'S CLAIMS

6       1.  Claims I and II

7       In Claims I and II, Petitioner challenges the admission of propensity evidence at his trial.

8  At trial, the prosecution introduced evidence that Petitioner had raped an eighteen-year-old girl in

9  2000, nearly eight years before, and unrelated to (other than the nature of the crime) the present

10 offense.  Petitioner was not charged with a crime at the time of the 2000 incident.  Specifically,

11 in Claim I Petitioner raises a constitutional challenge to California Evidence Code section 1108,

12 which permits the use of propensity evidence in criminal trials where the defendant is charged

13 with sexual misconduct.  In Claim II, Petitioner directly challenges the constitutionality of the

14 introduction of the propensity evidence at his trial.

15      Under the circumstances of this case, Petitioner is only entitled to relief if he shows that

16 in upholding the introduction of the propensity evidence the California Court of Appeal

17 contradicted or unreasonably applied clearly established federal law, as determined by the

18 Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).  In *Estelle v. McGuire*, 502 U.S.

19 62, 75 n. 5 (1991), the Supreme Court expressly refused to determine whether the introduction of

20 prior crimes evidence to show propensity to commit a crime would violate the Due Process

21 Clause.[2]  *See also Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006) ("*Estelle* expressly left

22 this issue an 'open question'").  Because the Supreme Court has specifically declined to address

23 whether the introduction of propensity evidence violates due process, Petitioner lacks the clearly

24 _____

25      [2]     The Supreme Court concluded: "Because we need not reach the issue, we express
   no opinion on whether a state law would violate the Due Process Clause if it permitted the use of
26 'prior crimes' evidence to show propensity to commit a charged crime." *McGuire*, 502 U.S. at
   72 n. 5.

                                    5

established federal law necessary to support his claims.  *Id.*; *see also Mejia v. Garcia*, 534 F.3d

1036, 1046-47 (9th Cir. 2008) (relying on *Estelle* and *Alberni* and concluding that the

introduction of propensity evidence under California Evidence Code section 1108 does not

provide a basis for federal habeas relief, even where the propensity evidence relates to an

uncharged crime); *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme

Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

constitutes a due process violation sufficient to warrant issuance of the writ.").  He is not entitled

to relief.

### 2. Claim III

In Claim III, Petitioner alleges that the jury instructions, specifically those related to the

propensity evidence discussed above, unconstitutionally reduced the state's burden of proof.

Petitioner challenges two jury instructions given at his trial, CALCRIM No. 375 and CALCRIM

1191.  CALCRIM No. 375, as read and submitted to the jury at Petitioner's trial, states as

follows:

> The People presented evidence that the defendant committed the
> offense of rape that was not charged in this case.
>
> You may consider this evidence only if the People have proved by
> a preponderance of the evidence that the defendant in fact
> committed the uncharged offense.  Proof by a preponderance of the
> evidence is a different burden of proof than proof beyond a
> reasonable doubt.  A fact is proved by preponderance of the
> evidence if you conclude that it is more likely than not that the fact
> is true.
>
> If the People have not met this burden, you must disregard this
> evidence entirely.
>
> If you decide that the defendant committed the uncharged offense,
> you may, but are not required to, consider that evidence for the
> limited purpose of deciding whether or not:
>
> The defendant was the person who committed the offense alleged
> in this case; or
>
> The defendant acted with the intent to arouse, appeal to, or gratify
> the lust, passions, or sexual desires of himself or the child in this

1    case; or

2    The defendant had a motive to commit the offense alleged in this
     case; or
3
     The defendant had a plan or scheme to commit the offense alleged
4    in this case.

5    In evaluating this evidence, consider the similarity or lack of
     similarity between the uncharged offense and the charged offense.
6
     Do not consider this for any other purpose.
7
     If you conclude that the defendant committed the uncharged
8    offense, that conclusion is only one factor to consider along with
     all the other evidence.  It is not sufficient by itself to prove that the
9    defendant is guilty.  The People must still prove the charge beyond
     a reasonable doubt.
10

11   Clerk's Tr. at 180-81.  CALCRIM No. 1191, as read and submitted to the jury, states:

12   The People presented evidence that the defendant committed the
     crime of Rape that was not charged in this case.  This crime is
13   defined for you in these instructions.

14   You May consider this evidence only if the People have proved by
     a preponderance of the evidence that the defendant in fact
15   committed the uncharged offense.  Proof by a preponderance of the
     evidence is a different burden of proof from proof beyond a
16   reasonable doubt.  A fact is proved by a preponderance of the
     evidence if you conclude that it is more likely than not that the fact
17   is true.

18   If the People have not met this burden of proof, you must disregard
     this evidence entirely.
19
     If you decide that the defendant committed the uncharged offense,
20   you may, but are not required to, conclude from that evidence that
     the defendant was disposed or inclined to commit sexual offenses,
21   and based on that decision, also conclude that the defendant was
     likely to commit and did commit Lewd and Lascivious Conduct
22   with a Child, as charged here.  If you conclude that the defendant
     committed the uncharged offense, that conclusion is only one
23   factor to consider along with all the other evidence.  It is not
     sufficient by itself to prove that the defendant is guilty.  The People
24   must still prove the charge beyond a reasonable doubt.

25   Do not consider this evidence for any other purpose except for the
     limited purpose of determining the defendant's disposition to
26   commit sexual crimes.

7

1  *Id.* at 182.

2      In upholding the use of the above instructions, the California Court of Appeal, relying

3  largely on established precedent from the California Supreme Court, stated as follows:

4          Defendant next contends CALCRIM Nos. 375 and 1191 violate the
           federal Constitution by permitting a finding of guilt based on a fact
5          not proved beyond a reasonable doubt.

6          The People contend this claim was forfeited by a failure to object
           below. Because his claim of error would affect defendant's
7          substantial rights, we address it nonetheless. (Pen.Code, §§ 1259,
           1469; Lewis, supra, 46 Cal.4th at p. 1294, fn. 28.)

8
           Defendant contends his due process rights were violated when the
9          trial court instructed the jury in accordance with CALCRIM No.
           1191. He states that by instructing the jurors to use the
10         preponderance of the evidence standard to determine whether
           defendant committed the previous acts, and then instructing them
11         that they could use that determination to conclude that defendant
           did commit the charged acts, the reasonable doubt standard was
12         unconstitutionally undermined.FN9 Defendant concedes that the
           California Supreme Court has already ruled that similar
13         instructions pass constitutional scrutiny and declares he is asserting
           this argument only to exhaust the due process claim for federal
14         review.

15             FN9. Defendant relies primarily on a federal
               appellate court decision in support of his appeal.
16             (*Gibson v. Ortiz* (9th Cir.2004) 387 F.3d 812, 817
               [habeas corpus review of a California conviction],
17             overruled on other grounds by *Byrd v. Lewis* (9th
               Cir.2009) 566 F.3d 855, 866.) *Gibson* does not aid
18             his claim, as it addressed the constitutionality of the
               1996 version of CALJIC No. 2.50.01. That
19             instruction is distinguishable from the instruction
               provided in defendant's case in that the *Gibson*
20             instruction did not advise the jury that the
               uncharged sex offense "is only one factor to
21             consider along with all the other evidence" or that
               "It is not sufficient by itself to prove that the
22             defendant is guilty. The People must still prove the
               charge beyond a reasonable doubt." (*See* CALJIC
23             No. 2.50.01 (6th ed.1996).) Defendant does not cite
               to the relevant California authority on these
24             instructions.

25         "Although the instruction considered in [ *People v.*] *Reliford* [
           (2003) 29 Cal.4th 1007 (*Reliford*) ] was the older CALJIC No.
26         2.50.01, there is no material difference in the manner in which each

                                        8

of the instructions allows the jury to conclude from the prior conduct evidence that the defendant was disposed to commit sexual offenses and, therefore, likely committed the current offenses. CALCRIM No. 1191, as given here, cautions the jury that it is not required to draw these conclusions and, in any event, such a conclusion is insufficient, alone, to support a conviction." (*People v. Cromp* (2007) 153 Cal.App.4th 476, 480 (*Cromp*); *see also People v. Schnabel* (2007) 150 Cal.App.4th 83, 87.) Following the holdings of *Reliford*, *Cromp*, and *Schnabel*, we find no error.

Similarly, with respect to CALCRIM No. 375, our Supreme Court has rejected a similar argument regarding CALJIC No. 2.50.1. (*See People v. Medina* (1995) 11 Cal.4th 694, 762-764 (*Medina*); *People v. Carpenter* (1997) 15 Cal.4th 312, 380-383 (*Carpenter*).) In *Medina*, the court held that CALJIC No. 2.50.1 was a correct statement of the law. "[T]he facts tending to prove the defendant's other crimes for purposes of establishing his criminal knowledge or intent are deemed mere 'evidentiary facts' that need not be proved beyond a reasonable doubt as long as the jury is convinced, beyond such doubt, of the truth of the 'ultimate fact' of the defendant's knowledge or intent. [Citation.]" (*Medina*, *supra*, 11 Cal.4th at p. 763.) *Carpenter* also addressed and rejected defendant's contention that the combination of the CALJIC instructions given unconstitutionally diluted the reasonable doubt standard. (*Carpenter*, *supra*, 15 Cal.4th at pp. 381-383.) The court noted that a criminal defendant has a due process right to have each fact necessary to convict proven beyond a reasonable doubt. However, the court did not find this burden diminished by an instruction that other crime evidence need only be proved by a preponderance of the evidence. It further found that when the instruction was viewed in context with instructions on the presumption of innocence, reasonable doubt, and burden of proof (which were also given here), it was not reasonably likely a jury would find the necessary elements of the charged offense true on a standard less than beyond a reasonable doubt. (*Id.* at p. 383.)

The version of CALJIC No. 2.50.1 considered in *Medina* and *Carpenter* is similar in all material respects to CALCRIM No. 375 as given here in its explanation of the burden of proof. Each of the instructions allows the jury to conclude from the prior conduct evidence that defendant was the person who committed the offenses alleged in this case and/or that defendant had the intent, motive, or a plan or scheme to commit the offenses alleged. CALCRIM No. 375 cautions the jury that it is not required to draw these conclusions and, in any event, that such a conclusion is insufficient, alone, to support a conviction. Based on Medina and Carpenter, we therefore reject defendant's contention that CALCRIM No. 375 violated his due process rights. (*Cf. Cromp*, *supra*, 153 Cal.App.4th at p. 480; *see also Auto Equity Sales*, *supra*, 57 Cal .2d at p. 455.)

> Our Supreme Court has rejected similar challenges to these instructions. (*People v. Carter* (2005) 36 Cal.4th 1114, 1188; *Carpenter*, *supra*, 15 Cal.4th at pp. 380-383; *Medina*, *supra*, 11 Cal.4th at pp. 762-764; *Reliford*, *supra*, 29 Cal.4th at pp. 1015-1016.) Following the reasoning of those cases, we also reject defendant's challenge.

Slip Op. at 18-21.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).  If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been deprived of due process. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004); *Taylor v. Kentucky*, 436 U.S. 478, 485-86 (1978).  Any jury instruction that  "reduce[s] the level of proof necessary for the Government to carry its burden  . . . is plainly inconsistent with the constitutionally rooted presumption of innocence."  *Cool v. United States*, 409 U.S. 100, 104 (1972).

Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  "[T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings."  *Sullivan v. Louisiana*, 508 U.S. 275, 279-81 (1993) (emphasis in original).  Where such an error exists, it is considered structural and thus is not subject to harmless error review.  *See id.* at 280-82; *but see Byrd v. Lewis*, 566 F.3d 855, 865-66 (9th Cir. 2009) (recognizing that after *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), harmless error analysis applies to instructions that impermissibly lower the burden of proof if there is an alternative way for the jury to find the defendant guilty without relying on the unconstitutional instruction).  However, if a jury instruction is deemed "ambiguous," it will violate due process only when a reasonable likelihood exists that the jury

10

1  has applied the challenged instruction in a manner that violates the Constitution. *Estelle*, 502

2  U.S. at 72.  Any challenged instruction must be considered in light of the full set of jury

3  instructions and the trial record as a whole. *See Cupp v. Naughten*, 414 U.S. 141 (1973).

4        In *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004), overruled on other grounds by *Lewis*,

5  566 F.3d at 866, the Ninth Circuit had the opportunity to address the constitutionality of the

6  former versions of the instructions given at Petitioner's trial.  The Ninth Circuit determined that

7  the instructions allowed the defendant in *Gibson* to be convicted by a preponderance of the

8  evidence, rather than by beyond a reasonable doubt. *Gibson*, 387 F.3d at 822.  The *Gibson* Court

9  concluded the previous versions of the instructions, which allowed the jury to consider the

10 evidence of past sexual misconduct if the prosecution proved them by a preponderance of the

11 evidence, were not harmonized with the reasonable doubt standard to be convicted of the charged

12 crime. *Id.* at 822-23 ("Because the trial court offered no explanation harmonizing the two

13 burdens of proof discussed in the jury instructions, Gibson's jury was presented with two routes

14 of conviction, one by a constitutionally sufficient standard and one by a constitutionally deficient

15 one.").

16       In the instant case, the jury was instructed with updated versions of the instructions

17 designed to comport with *Gibson*. *See People v. Falsetta*, 21 Cal.4th 903 (1999); *People v.*

18 *Reliford*, 29 Cal.4th 1007 (2003).  Added to of each of the challenged instructions was the

19 following statement:

20              If you conclude that the defendant committed the uncharged
             offense, that conclusion is only one factor to consider along with
21           all the other evidence.  It is not sufficient by itself to prove that the
             defendant is guilty.  The People must still prove the charge beyond
22           a reasonable doubt.

23 A close reading of CALCRIM 1191, as given to the jury in this case, shows that it still includes

24 some language which, if read in a particular way, could impart to the jury that they may find a

25 defendant guilty of the charged crime based on a finding that he had committed a previous crime

26 by a preponderance of the evidence.  Paragraph four of that instruction begins by stating: "If you

11

1  decide that the defendant committed the uncharged offense [by a preponderance of the evidence],

2  you may . . . conclude from that evidence that the defendant . . . did commit Lewd and Lascivious

3  Conduct with a Child, as charged here."  Clerk's Tr. at 182.  However, immediately after that

4  sentence is the added portion of the instruction which makes it clear to the jury that the

5  propensity evidence is only one factor to consider, is not sufficient by itself to prove the

6  defendant guilty, and that the defendant still must be proven guilty beyond a reasonable doubt.

7  *Id.*  The added clause to the instructions harmonized the instruction with the reasonable doubt

8  standard required to convict Petitioner of the charged crime.

9          The trial court informed the jury that the propensity evidence could only be considered if

10  it was proved by a preponderance of the evidence.  If the jury did determine that they should

11  consider the propensity evidence, they were informed that it was "not sufficient by itself to prove

12  the defendant is guilty" and that the "People must still prove the charge beyond a reasonable

13  doubt."  The instructions given at Petitioner's trial, taken as a whole, did not lower the ultimate

14  burden of proof and correctly articulated to the jury that they must find Petitioner guilty beyond a

15  reasonable doubt.[3]  *See Estelle*, 502 U.S. at 71-72 (an instruction may not be judged in artificial

16  isolation, but must be considered in the context of the instructions as a whole and the trial

17  record); *United States v. Frady*, 456 U.S. 152, 169 (1982) (jury instructions must be evaluated in

18  the context of the overall charge to the jury as a component of the entire trial process).  They did

19  so.  The California Court of Appeal reasonably concluded that the given instructions did not

20  violate the United States Constitution.  Petitioner is not entitled to relief on this claim.

21  / / /

22  / / /

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24          [3]  While unpublished, and therefore not precedent (*see* Ninth Circuit Rule 36-3(a)), a
panel of the Ninth Circuit has upheld the new version of the challenged instructions, determining
25  that the new "version is materially different [from the instructions held unconstitutional in
*Gibson*], as it includes an explicit admonition that evidence of a prior sexual offense is not, by
26  itself, sufficient to convict the defendant of the charged crimes."  *Abel v. Sullivan*, 326 Fed.
Appx. 431, 434 (9th Cir. 2009).

3.  Claim IV

In Claim IV, Petitioner claims that the trial court should have given a *sua sponte* instruction on voluntary intoxication.  In the alternative, Petitioner claims that his defense counsel was ineffective for failing to request such an instruction.  Both claims have been properly exhausted in state court.  The California Court of Appeal denied Petitioner's claims as follows:

> Defendant's final contention is that the court was required to instruct, sua sponte, on voluntary intoxication. He concedes that this argument has also been rejected by the California Supreme Court in *People v. Saille* (1991) 54 Cal.3d 1103, 1117-1120 *(Saille)*. As above, where there is a California Supreme Court opinion rejecting a defendant's claim, we are bound by that decision. (*Auto Equity Sales*, *supra*, 57 Cal.2d at p. 455.)

> Defendant also contends counsel was ineffective in failing to request instruction on the issue of defendant's intoxication. "The law regarding claims of ineffective assistance of counsel is settled. Defendant must show that counsel's performance was both deficient and prejudicial, i.e., that it is reasonably probable that counsel's unprofessional errors affected the outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 693-694 [ ... 80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217....) We have also said that if the record sheds no light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266....)" (*People v. Castillo* (1997) 16 Cal.4th 1009, 1014-1015.)

> A defendant is entitled, upon request, to an instruction on voluntary intoxication only where there is substantial evidence of the defendant's voluntary intoxication and that the intoxication affected the defendant's ability to meet an element of the charged offense, such as premeditation, deliberation, or specific intent. (*People v. Williams* (1997) 16 Cal.4th 635, 677; *Saille*, *supra*, 54 Cal.3d at p. 1120.) There must be "evidence from which a reasonable jury could conclude defendant's mental capacity was so reduced or impaired as to negate the required criminal intent. [Citation.]" (*People v. Marshall* (1996) 13 Cal.4th 799, 848 (*Marshall*).)

> We conclude the evidence in this case would not have required giving instructions on intoxication. Although the offenses were committed after defendant consumed Vicodin, Excedrin PM, and a large amount of alcohol during the course of the day, evidence of the effect of defendant's alcohol consumption on his state of mind is lacking. At most the evidence showed that defendant

13

1    occasionally blacked out or had memory lapses when he drank.
2    There was no evidence either of those things occurred in this case.
     There was no evidence of the amount of alcohol defendant would
     usually consume prior to such a blackout or memory lapse, or
3    evidence of how that amount compared to the amount he
     consumed on the night of the molestation. Casey testified the large
4    amount of alcohol consumed by defendant on that night was usual
     for defendant. On the night of the molestation, he was "a little
5    drunk" but not abnormally so and he was not behaving unusually.
     Defendant's brother also testified that other than being angry at the
6    accusation, defendant's behavior was not unusual on the night of
     the molestation. There was no evidence of defendant's
7    blood-alcohol content or any evidence indicating defendant was
     impaired to the point that he could not form the requisite criminal
8    intent. There simply was no "evidence of the effect of defendant's
     alcohol consumption on his state of mind." ( *Marshall*, *supra*, 13
9    Cal.4th at p. 848.) "The fact that a defendant has been drinking,
     without evidence that he became intoxicated thereby, provides no
10   basis for an instruction on intoxication. [Citations.]" (*People v.
     Sanchez* (1982) 131 Cal.App.3d 718, 735.) On this record, if
11   counsel had requested the instruction, the trial court properly
     would have refused it. Accordingly, counsel was not ineffective for
12   not requesting the instruction. Counsel's failure to make an
     unmeritorious request is not ineffective assistance. (*People v. Price*
13   (1991) 1 Cal.4th 324, 387.)

14   Slip Op. at 21-24.

15        Issues relating to jury instructions must infect the entire trial in order to establish a

16   violation of due process. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Estelle*, 502 U.S. at 72;

17   *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir. 1993); *Dunckhurst v. Deeds*, 859 F.2d 110, 114

18   (9th Cir. 1998).  Failure to instruct on a defense theory of the case is only reversible error if the

19   theory is legally sound and the evidence in the case supports the instruction.  *Beardslee v.

20   Woodford*, 358 F.3d 560, 577 (9th Cir. 2004).

21        In determining whether an instruction on voluntary intoxication was warranted in this

22   case, this court is bound to follow California law as to when the defense is applicable.  *See

23   Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state

24   court's interpretation of state law, including one announced on direct appeal of the challenged

25   conviction, binds a federal court sitting in habeas corpus." (citations omitted))*.*  Under California

26   law, a defendant is entitled to an instruction on voluntary intoxication only where there is

                                                     14

substantial evidence of his voluntary intoxication and that the intoxication affected his ability to meet an element of the charged offense, such as specific intent. Cal. Penal Code § 22(b); *People v. Williams*, 16 Cal. 4th 635, 677 (1997); *People v. Saille*, 54 Cal. 3d 1103, 1120 (1991). There must be "evidence from which a reasonable jury could conclude defendant's mental capacity was so reduced or impaired as to negate the required criminal intent." *People v. Marshall*, 13 Cal. 4th 799, 848 (1996). "[M]erely showing that the defendant consumed some alcohol prior to commission of the crime without showing the effect of the alcohol on him is not sufficient to warrant an instruction on [voluntary intoxication]." *People v. Carr*, 8 Cal. 3d 287, 294 (1972); *People v. Pensinger*, 52 Cal. 3d 1210, 1241 (1991).

In the present case, there was substantial evidence that Petitioner was under the influence of alcohol, sleeping pills, and pain medication at the time of the crime. Petitioner's wife testified at trial that before the incident she had been drinking beer with her husband. Rep.'s Tr. at 254. The next day, she counted the empty bottles and concluded that Petitioner had drank six 32-ounce bottles of Bud Ice, as well as two or three 24-ounce cans of the same. *Id.* She also testified that Petitioner took sleeping pills, Excedrin PM, and pain medication, Vicodin. *Id.* at 255. Petitioner's wife testified that Petitioner "drinks a lot of beer" and that drinking such a large quantity of beer was not unusual. *Id.* at 255-56. She further testified that Petitioner sometimes, as a result of the alcohol consumption, does things but does not remember doing them. *Id.* at 256. She did not testify that Petitioner did not, or likely did not, remember molesting their daughter.

While the evidence shows that Petitioner consumed alcohol, as well as other medications, leading up to the incident, California law requires that to establish a defense of voluntary intoxication evidence must be presented showing the effects of the alcohol or drugs on the defendant's mental state. *See Carr*, 8 Cal. 3d at 294; *Pensinger*, 52 Cal. 3d at 1241. The record does not include any testimony about the effects of the alcohol or the drugs on Petitioner on the night of the crime. While there is evidence that alcohol consumption had caused him to forget

his actions in the past, there was no evidence that he did so on the night in question.  While it may have been possible for the jury to imply the effects of drinking the equivalent of 22 above average alcohol content 12 ounce cans of beer, it cannot be said that the California Court of Appeal reached an unreasonable determination based on the facts presented at Petitioner's trial when it concluded that there was not substantial evidence in the record to warrant an instruction on voluntary intoxication.  *See Woodford*, 358 F.3d at 577.

Because an instruction on voluntary intoxication was not warranted by the record in this case, Petitioner's additional argument that his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to request such an instruction is foreclosed.  *See, e.g.*, *Gonzalez v. Knowles*, 515 F.3d 1006, 1017 (9th Cir. 2008) ("[C]ounsel cannot be deemed ineffective for failing to raise [a] meritless claim.") (citation omitted).

For the foregoing reasons, Petitioner is not entitled to relief on this, his final, claim.

## IV.  CONCLUSION

For the reasons discussed in this Order, Petitioner is not entitled to federal habeas relief. Should petitioner wish to appeal the court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement. 28 U.S.C. § 2253(c)(3).

A certificate of appealability should be granted for any issue that petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'"  *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).[4]  In this

---

[4] Except for the requirement that appealable issues be specifically identified, the standard for issuance of a certificate of appealability is the same as the standard that applied to issuance of a certificate of probable cause.  *See Jennings*, 290 F.3d at 1010.

1    case, however, Petitioner failed to make a substantial showing of the denial of a constitutional

2    right with respect to any issue presented.

3         Accordingly, IT IS HEREBY ORDERED that:

4         1.    Petitioner's Petition for writ of habeas corpus is DENIED;

5         2.    A certificate of appealability shall not issue; and

6         3.    The Clerk is directed to close this case.

7    DATED:  April 25, 2012

8

9

10

11

12                                    TIMOTHY J BOMMER
                                       UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26